HIBBARD, SPENCER & BARTLETT, Respondent, vs. PEEK, Appellant.

*January 11 — January 28, 1890.*

*(1) Justices' courts: Pleading: Amendment.   (2) Agency: Contract by traveling salesman to pay commissions for orders: Evidence of usage.*

1. In an action in justice's court for a balance due upon an account stated for goods sold and delivered, after the cause had been submitted, but before judgment, the justice allowed the complaint to be amended to correspond with the proofs by striking out the allegation of an account stated.  *Held,* not error.

2. The evidence in this case — showing, among other things, that it was the practice of a considerable number of houses in the hardware business to give their traveling salesmen authority to agree to pay commissions to third parties for procuring orders — is *held* not to establish a usage in the hardware business so uniform and long-continued as to warrant the court in assuming that the parties contracted with reference thereto or that the plaintiff's traveling salesman had authority to bind his principal to pay such commissions.

APPEAL from the Circuit Court for *Ashland* County.

The action was commenced in justice's court.  The complaint alleges that the plaintiff is a corporation under the laws of Illinois; that the defendant is indebted to it in the sum of $115 on balance of an account stated for goods, wares, and merchandise sold and delivered to him at his request.  The answer denied the allegations of the complaint, and set up a counterclaim for services rendered by the defendant for the plaintiff, amounting to $115.  After both parties had submitted the case, the plaintiff asked leave to amend the complaint to correspond to the evidence by striking out the allegation of account stated.  The amendment was allowed against defendant's objection, and judgment was rendered in favor of the plaintiff for $121 and costs.  The defendant appealed to the circuit court,

and at the trial asked that the complaint originally made on account stated, and not the amended complaint, be considered as the complaint in the action. The motion was denied. The circuit court directed a verdict in favor of the plaintiff, and from the judgment entered thereon the defendant appeals. Other facts are stated in the opinion.

For the appellant there was a brief by *Miles & Shea*, and oral argument by *W. F. Shea*.

For the respondent there was a brief by *Tomkins, Merrill & Smith*, and oral argument by *W. M. Tomkins*.

COLE, C. J. The counsel for the defendant below insists that the justice had no power to allow the complaint to be amended after trial. This position we deem untenable. The statute authorizes the justice to allow pleadings to be "amended at any time before trial, or during the trial, when by such amendment substantial justice will be promoted." R. S. sec. 3626, subd. 11. The amendment was not very material. The action was brought to recover the balance of an "account stated" for goods sold. There is some doubt whether the proof fully sustained this allegation. It appeared that the plaintiff's account had been presented to the defendant before the suit was brought, and he admitted it to be correct, but claimed that he had an offset for commissions which would balance the account. The justice disallowed the offset or counterclaim. The amendment permitted the plaintiff to strike out the allegation "account stated," and recover the amount shown to be due. The amendment was unimportant, as we have said, but it made the complaint conform technically to the evidence given on the trial. It could not have misled the defendant, and the amendment, if necessary, certainly promoted substantial justice. It was not error to allow it to be made.

The real contest in the case is upon the counterclaim or offset of the defendant for commissions. The facts on which

the counterclaim arises are stated by the defendant in his testimony substantially as follows: Bennet (the plaintiff's salesman) came to my store .at Ashland, and asked "if I wanted some goods. I told him I thought so; I would look around. I asked him how he would like to take a stock order. He said, 'That is what I would like,' and said: ·'Where is it?' I said I wanted something for it. I generally charge for information that is valuable. He wanted ·to know what I wanted, and I told him five per cent. on the amount. He asked. me who it was, and I said: 'You give me five per cent., and I will tell you.' He said he did not know about it; that he would take a little while, and go over to Garnich's. He went into Garnich's, and came back, and said he knew who that party was, and said it was Nelson. I said, 'That is right, but,' I said, 'it won't do you any good,' as I was positive he could not get the order without me; and he said: 'I will give you five per cent. Give me the order.' I dictated an order, and told Bennet to deliver it to Nelson." It appears that Bennet took this order or letter, and went to Washburn, and sold a bill of goods, ·amounting to $2,300 or $2,400, to Nelson. Nelson testified, in effect, that he did not buy on the defendant's credit, and that the only influence that the defendant's letter had upon him was that the defendant recommended the firm, and that he bought on that ground; that he knew the house before, and that it had been recommended to him by half a dozen other men; that he probably should have bought the same stock if the defendant had not sent the letter.

Now, upon these facts, is there. any ground for holding that there was a valid contract entered into between Bennet and the defendant to pay the five per cent. commissions on the bill of goods sold Nelson? There is surely no ground for claiming that Bennet had any authority from the plaintiff to give. such commissions for any aid or information which the defendant might give or render in mak-

ing the sale. The secretary of the plaintiff corporation testifies distinctly and positively that the agent who sold the goods to the defendant had no authority to promise the defendant a commission on goods sold to other people, or to Nelson, and that such promise, if ever made, was never ratified or confirmed so as to make it binding on the principal. Indeed, the evidence is perfectly satisfactory and conclusive that the plaintiff never gave its traveling salesmen any authority whatever to grant commissions, or even credits, on goods sold by them. It is clear, therefore, that Bennet had no express authority to bind his principal to pay the defendant commissions on goods sold Nelson, even if such a contract were made.

Had he an implied authority, growing out of the usage or custom in the hardware trade, to render his principal liable for such commissions? On this point, depositions were taken of a number of traveling salesmen, representing hardware houses in Detroit, Chicago, and Milwaukee, who testified that it was customary for traveling men in that line of business to agree to pay and to pay commissions to third parties for procuring orders, and that such contracts were sanctioned by the different houses which they represented. But there was considerable countervailing proof on this question of custom; and the circuit court held that the alleged custom, especially in Chicago and Ashland, was not sufficiently established to warrant submitting the case to the jury on the alleged usage. On that point, we think, the learned circuit court was clearly right. We do not think there was any proof given of a custom or usage in the hardware trade of traveling salesmen paying such commissions, or agreeing to pay them, which was sufficiently long-continued and uniform so that the court would be justified in assuming that the parties contracted with reference to it, or that the salesman had authority to bind his principal to pay such commissions by reason of its existence.

The practice of a considerable number of houses in the hardware trade of giving their traveling salesmen authority to pay such commissions would not warrant a court in presuming that agents generally had such authority who were sent out by hardware houses to sell their goods.

The authority of an agent in any given case is incident to the character bestowed upon him by the principal. If the principal has, by his express act or as the logical result of his words or conduct, impressed upon the agent the character of one authorized to act and speak for him in a given capacity, authority so to speak and act follows as a necessary incident of the character, and the principal, having conferred the character, will not be heard to assert, as against third parties who have relied thereon in good faith, that he did not intend to impose so much authority, or that he had given the agent express directions not to exercise it; and where the principal confers upon the agent an authority of a kind, or empowers him to transact business of a nature, in reference to which there is a well-defined and publicly known usage, it is the presumption of law, in the absence of anything to indicate a contrary intent, that the authority was conferred in contemplation of the usage. Mechem, Ag. §§ 278, 281; Whart. Ag. §§ 134, 676, 696. The usage of a particular trade or business, or of a particular class of agents, may be shown, not for the purpose of enlarging the powers of the agent employed therein, but for the purpose of interpreting those powers which are actually given; for the means ordinarily used to execute the authority are included in the power, and may be resorted to by all agents, and especially by commercial agents. Story, Ag. § 77.

But the evidence of the usage, in a case like this, should be clear and satisfactory, and should show that the usage has so long continued, and has been so uniform, that merchants in that kind of business may be presumed to author-

ize their agents to sell their goods in the ordinary way in which such goods are sold, and in reference to such custom. The evidence, in the present case, falls far short of establishing the usage or custom in the hardware business of traveling salesmen making contracts on behalf of their principals to pay commissions to third parties for aid in procuring orders from those to whom goods are sold. It is quite clear that the defendant's recommendation sent to Nelson did not have any influence upon the latter in inducing him to make the purchase he did; but, had the fact been otherwise, we do not think the plaintiff was bound by the contract of Bennet to pay the defendant the commissions he claims, as it was beyond the scope of his authority to make such a contract.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.